IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE GREEN<br>    Plaintiffs<br><br>vs.<br><br>DR. MAXA, et al,<br>    Defendants. | C.A.No. 17-cv-223ERIE<br><br>Re: Motions for Summary Judgment<br>ECF No. 108; ECF No. 116 |

**MEMORANDUM OPINION**

District Judge Susan Paradise Baxter

**I.    Relevant Procedural History**

Presently pending before this Court is a motion for summary judgment filed by Dr. Maxa [ECF No. 116] and a motion for summary judgment filed by the Commonwealth Nurse Defendants [ECF No. 108], as well as two motions related to Plaintiff's request for sanctions [ECF No. 93; ECF No. 104].

The remaining factual allegations of the pro se complaint pertain to the medical care and treatment received by Tyrone Green, an incarcerated person, while he was housed at SCI Albion. Following the resolution of dispositive motions, only a § 1983 claim based on the Eighth Amendment against Dr. Maxa and Nurses Williams, Urquhart[1], and Edwards remains. The gist of Plaintiff's remaining claim is that Defendants allowed an infection to go untreated for seven days thereby acting with deliberate indifference to his serious medical needs.

---

[1] Nurse Urquhart was previously identified in briefing as Nurse Erkhart.

1

Defendant Dr. Maxa and the Commonwealth Nurse Defendants are represented separately. Both have filed motions for summary judgment. ECF No. 108; ECF No. 116. Plaintiff has opposed both motions. ECF No. 123-127. These motions are ripe for disposition by this Court.

## II. Standards of Review

Although a pro se litigant's pleadings are to be construed liberally, *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999), pro se litigants are not excused from substantive and procedural law. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). The Court notes that Mr. Green is an experienced litigant in this Court.

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-

movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322.

When considering a motion for summary judgment, the court cannot weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Each set of Defendants has filed a Concise Statement of Material Facts with its motion for summary judgment and Plaintiff has filed a Response to both Concise Statements, as required by the Federal and Local Rules of Civil Procedure. This Court is compelled to speak to Plaintiff's Responses to Defendants' Concise Statements which run afoul of the Rules in several ways.

First, Plaintiff has not provided citation to the record in support of most of his denials. Local Rule 56(C) mandates that an opposing party's response to the motion for summary judgment admit or deny each numbered paragraph in the moving party's Concise Statement of Material Facts **while setting forth a basis for the same, with appropriate reference to the evidentiary record.** W.D.Pa. LCvR. 56(C)(1) (2013). See also Fed.R.Civ.P. 56(c)(1) (providing that a party asserting that a fact … is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposed of the motion only), admissions, interrogatory answers, or other materials …).

In addition, some of Plaintiff's denials are more limited in scope than the Concise Statement to which they respond. For example, the Commonwealth Nurse Defendants state:

> "On May 6, 2016, Plaintiff filed Grievance Number 625240 in which he acknowledged that Nurse Urquhart attempted to collect a urine sample on April 28th and told him to come back to try again later."

ECF No. 110, ¶ 11.[2] Plaintiff disputes this Concise Statement, **without citation or reference to any contrary evidence**, stating

> "Disputed. That Nurse Urquhart attempted to take a urine sample from Plaintiff and told him to come back. By way of further response, it was Defendant Williams who took Plaintiff's urine sample."

See ECF No. 125, ¶ 11. Additionally, Plaintiff's limited denial of Concise Statement #11 fails to answer whether he filed Grievance Number 625240 on May 6th.

By way of further example, Defendant Maxa states that a urine sample collected on May 2, 2016 was negative for blood but positive for E. coli and cites to the Urine Culture Report. ECF No. 118, ¶ 7. In response, Plaintiff indicates that the statement is "Disputed that Plaintiff['s] urine ever tested negative for blood." ECF No. 126, ¶ 7. Plaintiff cites no evidence to support his denial and Plaintiff does not respond to the part of the statement about whether urine was collected on May 2nd.

By way of final example, Defendants state that "[a] follow up urine test on May 16, 2016 was negative for E. coli." ECF No. 110, ¶ 10. In support of that Concise Statement, Defendants cite to medical records and a lab report from an outside lab. In opposition, and again without any

---

[2] In support of their Statement, Defendants provide the grievance (signed by Plaintiff) which states "… Nurse Steve asked Plaintiff to urinate … so he could run an initial test... Plaintiff was unable to urinate, Nurse Steve told Plaintiff that he was going to send Plaintiff back to his housing unit and call for him at 8 pm." See ECF No. 111-1, pages 12-13.

4

reference to the evidentiary record, Plaintiff asserts "Disputed. As to the veracity of the lab results." ECF No. 125, ¶ 10. Plaintiff does not give any reason why he disputes the validity of these medical records. Even in his own sworn affidavit, offered in support of his opposition to the motions for summary judgment, Mr. Green fails to touch upon the results of this follow up test after he was treated with a full course of antibiotics.

It is each opposing party's responsibility to file with the Court the specific objections he or she has to a moving party's statement of undisputed facts. The word "disputed" in opposition with nothing more, as often submitted here by Plaintiff, not only violates the Rules, but seeks to place the burden on the Court to uncover evidence to support the denial. This the Court will not do. Moreover, when Plaintiff offers the single word "disputed" in opposition to a quoted section of documentary or testimonial evidence, it raises the question: What is being disputed or denied? Does Plaintiff claim that the quoted portion is inaccurately reproduced, or does he claim that he disagrees with the quotation? At some points, the reason for denial has little to do with the statement of fact it references. All of Plaintiff's denials are unsupported by citation to the record.

Motions for summary judgment are serious matters. The Court reviews each claim and the proffered evidence with care to determine whether judgment may be entered without a trial by a factfinder. Neither the Rules of Civil Procedure nor the interests of judicial economy allow for the Court to search for evidence either to support a party's position or to find a dispute to defeat summary judgment. If facts are not properly opposed, the Rules allow that they may be deemed admitted.[3] On such a record, we proceed here.

---

[3] *See* Fed.R.Civ.P. 56(e) ("If a party fails … to properly address another party's assertion of fact as required by Rule 56(c), the court may: … Grant summary judgment if the motion and supporting materials -- including the facts considered undisputed – show that the movant is entitled to it."); Local Rule 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary

5

### III. The Facts

The undisputed facts in this case are few. What the parties do agree on is that in the mid-afternoon of April 28, 2016, Plaintiff presented at the infirmary complaining of blood in his urine and a stinging sensation upon urination which had begun the previous day. ECF No. 110, ¶ 1. Later, in the evening of the same day, Plaintiff was admitted to a Psychiatric Observation Cell, after self-harming with a razor. ECF No. 118, ¶ 5; ECF No. 126, ¶ 5. The next day (April 29th) psychiatrist Dr. Gottesman ordered urinalysis and bloodwork. ECF No. 118, ¶ 6; ECF No. 126, ¶ 6. On May 4th, a nurse collected a urine sample for a urine dip test at the request of Dr. Maxa and the results showed that there was blood in Plaintiff's urine. ECF No. 118, ¶¶ 8, 9; ECF No. 126, ¶¶ 8, 9. Plaintiff's infection was treated with Cipro. ECF No. 118, ¶ 12; ECF No. 126, ¶ 12. A urine sample was collected from Plaintiff on May 16, 2016 after the course of Cipro. ECF No. 118, ¶ 13; ECF No. 126, ¶ 13.

The parties dispute whether a urine sample was taken on the afternoon of April 28th, the first day that Mr. Green presented at the infirmary. Defendants have produced evidence showing that Plaintiff could not produce a urine specimen for the test and Nurses Williams and Urquhart instructed him to return to his cell and come back to the infirmary in a couple of hours to try again. Meanwhile, Plaintiff argues that a urine sample was taken on April 28, 2016 and that the nurses hid the results from him. ECF No. 124 (Plaintiff's Sworn Affidavit) pages 2-3; ECF No. 123 (Plaintiff's Opposition to Defendants' motion for summary judgment), page 1 ("On April 28, 2016, ... Plaintiff was asked to give a urine sample which he did, the urine sample that

---

judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."). *See also Pondexter v. Allegheny County Housing Authority*, 2012 WL 3611225 (W.D. Pa. 2012).

Plaintiff gave, both Defendants claimed did not have blood in it and asked Plaintiff if he could produce more which Plaintiff said no he could not.").[4] The parties also disagree about how many times Plaintiff's urine was tested before an E. coli infection was discovered on May 4th.

### IV. The Exhaustion Requirement of the Prison Litigation Reform Act

The Commonwealth Nurse Defendants argue that Williams and Urquhart are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies in accordance with the requirement of the Prison Litigation Reform Act.[5]

The PLRA, 42 U.S.C. § 1997e(a) provides that

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits about prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002). The exhaustion requirement is not a

---

[4] In his complaint, Plaintiff alleges that a urine sample was taken by Nurses Williams and Steve. ECF No. 11, ¶ 15. Plaintiff's contention in this regard is belied by his own Grievance (Number 625240) written and signed by him on May 6, 2016, which says that "Plaintiff was unable to urinate, nurse Steve told Plaintiff that he was going to send Plaintiff back to his housing unit and call for him at 8pm. Plaintiff objected to that decision. *See* ECF No. 111-1, page 13, ¶ 6.

[5] The Commonwealth Nurse Defendants also argue that they should be entitled to summary judgment because Plaintiff was under the care of Dr. Maxa. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 540 n.4 (3d Cir. 2017) ("Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who knows that the prisoner is under a physician's care is certainly justified in believing that the prisoner is in capable hands so long as the nurse has no discernable basis to question the physician's medical judgment."). Yet these Defendants point to no evidence revealing when Plaintiff was being treated by Dr. Maxa during the seven-day period. Instead, the medical records show Progress Notes from April 28th through May 4th and none shows that Dr. Maxa treated Mr. Green on these dates. ECF No. 111-1.

technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." *Id.* at 83.[6]

It is not a plaintiff's burden to affirmatively plead exhaustion. *Jones v. Bock*, 549 U.S. 199, 217 (2007) ("... failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).[7]

---

[6] *See also Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

[7] A sister court within the Middle District has concisely summarized the burdens of proof on the failure to exhaust defense:

> Failure to exhaust available administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. But once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, as required by the Supreme Court, the ultimate burden of proof remains with the defendant.

8

### *The Administrative Process Available to State Inmates*

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner must timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident. Second, the inmate must timely submit a written appeal to intermediate review within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). Section 11(d) of the policy states that the inmate "shall identify individuals directly involved in the events."

### *Plaintiff's utilization of the grievance system*

On May 6, 2016, Plaintiff filed a four-page grievance (Number 625240) complaining about the actions of Dr. Maxa, Nurse Steve [Urquhart], Nurse Edwards and Dr. Gottesman. ECF No. 111-1, pages 12-15. Plaintiff grieved the actions of these medical staff from April 28th through May 4th. This grievance was rejected because it exceeded the page limitation and

---

*Njos v. Argueta*, 2017 WL 1304301, at *2 (M.D. Pa. Feb. 23, 2017) (internal citation omitted).

because it was based on more than one issue. *Id.* at page 12. On May 11, 2016, Plaintiff re-submitted Grievance 625240 grieving the actions of Nurse Edwards, Dr. Maxa, and "the nurse who initially tested my [sic] lied about my urine not having blood in it…," but not mentioning Nurse Steve. *Id.* at pages 18-19. The grievance does not specify the date that the unnamed nurse took his urine. The denial of this grievance was appealed to the Facility Manager on June 10th and Plaintiff specifically mentioned the conduct of Maxa, Edwards, and "the nurse that took my urine sample **on 5/2**…" *Id.* at page 21 (emphasis added). Finally, Plaintiff appealed to both SOIGA and the Director of the Bureau of Health Care Services. *Id.* at pages 23-27.

By appealing through all levels of review, Plaintiff has technically exhausted his administrative remedies. That said, Defendants argue that Plaintiff has failed to **properly** exhaust his remedies against Williams and Urquhart because he failed to name Steve Urquhart through all levels of review, and he failed to name Williams at all. Plaintiff's failure to identify Williams and Urquhart runs counter to the DC-ADM's directive that inmates identify the individuals involved in the event and results in a failure to exhaust.[8] *See Stockton v. Wetzel*, 2019 WL 4857686, at *10 (M.D. Pa. 2019). Summary judgment will be granted in favor of Nurses Urquhart and Williams.

---

[8] In opposition, Plaintiff argues that he did not know the names of these Defendants when he filed the grievance. ECF No. 123, page 5. Plaintiff's argument in this regard is not credible, as Plaintiff specifically named Nurse Steve in the original (rejected) grievance and then abandoned any reference to him when the grievance was resubmitted. Plaintiff's omission of Nurse Steve results in a failure to exhaust in violation of the PLRA. *See Spruill*, 372 F.3d at 234-35.

## V. Deliberate indifference claims against Dr. Maxa and Nurse Edwards

Plaintiff alleges that Dr. Maxa and Nurse Edwards lied about the results of his urine tests and thereby delayed treatment of an infection for seven days. Plaintiff alleges generally that the delay caused the infection to worsen. *See* ECF No. 111.

Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *See Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. 2013) *citing Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011). In other words, the defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit … each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when a prison official is deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish a violation of the constitutional right, a claimant must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carrroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent

11

conduct in the face of resultant pain and risk of permanent injury" *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

According to Plaintiff's own Affidavit, the earliest that Dr. Maxa became personally involved in any alleged unconstitutional conduct is May 2nd and the earliest Nurse Edwards became personally involved was May 3rd. *See* ECF No. 124. The medical records filed by Defendants do not reflect any involvement by Nurse Edwards and only reveal that Dr. Maxa became involved on May 4th, the same day Plaintiff alleges that he received medical treatment. *See* ECF No. 111-1. This discrepancy does not create a disputed issue of material fact, because even if Dr. Maxa became involved on May 2nd as Plaintiff swears, a two-day delay in medical treatment does not constitute delay sufficient to constitute deliberate indifference. *See Nichols v. Loppe*, 2019 WL 2571781, at *4 (E.D. Pa. 2019). Moreover, Defendants have produced evidence that beginning on May 5th, Plaintiff was treated with a course of antibiotics and later urinalysis revealed that after the antibiotic treatment, a urine culture was negative for blood and E. coli. ECF No. 111-1, pages 6, 9.[9] Plaintiff has provided no evidence to establish that any delay in medical treatment had a detrimental effect on his health. *See Jennings v. Al-Dabagh*, 97 Fed. App'x 548 (6th Cir. 2004).

### VI. Remaining Doe Defendants

Several unnamed Defendants are still active on the docket. Plaintiff alleges Dr. John Doe failed to schedule Plaintiff to see an outside nerve specialist and lied to an outside orthopedic doctor about the availability of a TENS unit at the prison. ECF No. 11-1, pages 4-5. The legal

---

[9] Although Plaintiff denies this in his Response to the Concise Statement, as discussed, because Plaintiff has not cited to evidence to support his denial and contradict Defendants' evidence, such may be admitted under the Federal and Local Civil Rules.

claims on which these facts are based were previously dismissed and this Defendant should have been terminated on the docket.

Based on the factual allegations, Nurse Jane Doe and Nurse John Doe, whom Plaintiff describes as the nurses he saw on the day he first complained of the bloody discharge, are Nurses Williams and Urquhart. *See* ECF No. 11-1, page 3. In his complaint, Plaintiff describes Jane Doe 2 as the nurse who collected his urine sample on May 2nd. *Id.* As discussed herein, judgment will be granted in favor of Defendants on all of Plaintiff's remaining claims.

### VII. Motion for Sanctions

Throughout the discovery phase of this litigation, Plaintiff sought the identity of Nurse Jane Doe 2 who he believes collected a urine sample from him on May 2, 2016 while he was in the POC. Plaintiff also sought video evidence of (1) his escort to the infirmary after self-cutting on April 28th and (2) his POC on May 2nd.[10] Because Defendants have failed to produce these, Plaintiff now requests that default judgment be granted against Nurse Jane Doe 2 and that the evidence he believes the video would have shown be deemed admitted.

The Federal Rules of Civil Procedure authorize the court to impose a wide range of sanctions on a party who fails to comply with its discovery obligations. *See* Fed.R.Civ.P. 37. Here, there is no reason to impose sanctions against the Commonwealth Defendants. The medical records do not reflect that a urine sample was taken on May 2nd and so also do not reveal who collected any urine sample that day. Moreover, Plaintiff has failed to state a viable Eighth Amendment claim against Nurse Jane Doe as all he alleges is that she collected a urine sample from him while he was in the POC. *See* ECF No. 11. Such alleged conduct does not rise to the

---

[10] While Plaintiff requests other items, these have been produced to Plaintiff as they were attached to the Commonwealth Defendants' opposition to this motion. *See* ECF No. 102.

level of a constitutional violation. Accordingly, no sanctions will be imposed based on the Commonwealth Defendants' failure to answer Plaintiff's discovery request as to Jane Doe's identity.

In regard to the video evidence, Defendants argue that such video evidence is no longer available. No sanctions are appropriate here as this evidence is not necessary to support Plaintiff's legal claims. Plaintiff's escort to the infirmary after he self-cut is irrelevant to any claim. The video of who came to collect any urine sample on May 2nd is also irrelevant as explained above.

An appropriate Order follows.